UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA WALKER,

        Plaintiff,

                              Case No. 20-CV-12206

vs.

                              HON. GEORGE CARAM STEEH

MICHIGAN EDUCATION ASSOCIATION,

        Defendant.

_____/

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF NO. 19]

Defendant Michigan Education Association filed a collection action against plaintiff Angela Walker in state court for union membership fees allegedly owing from February 2015 until plaintiff's membership was revoked in August 2018. Plaintiff filed the present action, alleging that defendant's attempt to compel her to pay union dues violates her First Amendment protections of free association and freedom of speech as secured by the Fourteenth Amendment and 42 U.S.C. § 1983. The matter is before this Court on defendant's motion for summary judgment under Fed. R. Civ. P. 56(a) or to dismiss for failure to state a claim under Rule 12(b)(6). (ECF No. 19). Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing

pursuant to Local Rule 7.1(f)(2).  For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Angela Walker began teaching at Pinckney Community Schools in 2006.  Her position was included within the bargaining unit represented by the Pinckney Education Association, a local affiliate of defendant Michigan Education Association ("MEA").  On August 30, 2006, Walker completed the Continuing Membership Application where she elected to be a full dues-paying member of MEA, further electing to have her dues deducted directly from her paycheck (ECF No. 19-3 *SEALED*, PageID.139).

Walker made voluntary payments of membership fees to MEA and was current with her dues until January 13, 2015.  After this date, Walker stopped making payments until she made a $200.00 payment on January 30, 2017.  Walker's membership was revoked by MEA in August 2018 for nonpayment of dues.  At that time Walker's balance was $3,398.25.  MEA filed a collection action against Walker in state court.  Walker then filed this federal case alleging that MEA's collection action violates her constitutional rights.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

I.      Development of law regarding union membership

Historically, unions represented all employees within a bargaining unit.  Because all employees in the bargaining unit benefited from the due process protections, as well as the wage and benefit packages, negotiated by the unions, many unions negotiated collective bargaining agreements that mandated union membership.  Some employees in the public sector objected to forced membership in unions when their dues went to support ideological causes that they opposed.  Such concerns were addressed by negotiating "agency shop" clauses in collective bargaining agreements.  Under these clauses, employees could elect to pay a lesser "agency fee" or "service fee," which represented the benefits of the union that they enjoyed without charges for non-collective bargaining related activities such as political donations.  Agency shop agreements were found to be constitutional by the Supreme Court.  *Abood v. Detroit Board of Ed*., 431 U.S. 209 (1977).

Two laws were enacted in Michigan that are relevant to this case.  Public Act 53, which took effect on March 16, 2012, prohibits public school employers from assisting labor organizations in collecting union dues or service fees.  MCL 423.10(1)(b).  This law forbids public school employers

from using their payroll department to assist in the collection of union dues. While the law impacts a method of payment of union dues, it does not have any impact on the financial obligations agreed to by individual union members. This reasoning was affirmed by the Michigan Court of Appeals which observed that "Act 53 did not alter the obligation of employees to pay dues pursuant to a lawful agreement." *Teamsters Loc. 214 v. Beutler*, No. 330854, 2017 WL 3441394, at *3 (Mich. Ct. App. Aug. 10, 2017).

The other relevant law is Public Act 349, the "Right to Work" amendment to the Public Employment Relations Act, M.C.L. 423.201, *et seq.* ("PERA"), which took effect on March 28, 2013. The Right to Work amendment permits public sector employees to resign from union membership, including agency fee membership, and provides that no collective bargaining agreement can mandate either type of membership.

Then, in June 2018, after more than 40 years of agency shop clauses in collective bargaining agreements, the Supreme Court overruled *Abood* and declared agency shop clauses unconstitutional. *Janus v. AFSCME*, 138 S.Ct. 2448, 2460 (2018) ("We conclude that this arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern.") After the *Janus* decision, there are two groups of employees in a bargaining unit

represented by the union: members and non-members. Unions still represent non-members, as the "duty [of fair representation] is a necessary concomitant of the authority that a union seeks when it chooses to serve as the exclusive representative of all the employees in a unit." *Id*. at 2469.

II. Walker's MEA membership

Walker's First Amendment argument is that her union dues represent coerced political speech and MEA's attempt to collect said dues is therefore unconstitutional (Complaint ¶¶ 16, 17, 33-35; ECF No. 1, PageID.5). Walker asserts that she does not support the MEA's "policies or politics" and "refused membership in the union" but was "compelled to sign a membership application" as a "condition of her public sector employment." (ECF No. 22, PageID.171). When Walker commenced her employment in 2006, she had the option to object to membership and pay only agency fees. However, Walker chose full membership and neither alleges nor submits evidence that she ever changed that election. This fact is confirmed by MEA Membership Supervisor, Cynthia McCurtis, who states that at no time did Walker submit a resignation of her membership to MEA or the local union (McCurtis aff'd ¶¶ 4, 7, 11; ECF No. 19-2, PageID.136-137).

While PA 53 prohibited public school districts from deducting union dues from employee paychecks, the law did not change the obligation of members to pay dues or agency fees they had agreed to pay based on their Continuing Membership Applications. Then PA 349 made it so public employers cannot mandate union membership as a condition of employment and provides that public employees can resign their membership. This law gave members like Walker the right to resign from the union, however it did not change the obligation of members to pay dues or agency fees where they did not resign their membership. In this case, there is no evidence that Walker attempted to terminate her Continuing Membership Application. On the contrary, the evidence shows that she mailed four payments to MEA after PA 53 and PA 349 took effect. Walker mailed the first check on March 20, 2014, one year after the Right to Work Amendment, and she mailed the last check on January 30, 2017.

The fact that Walker did not make regular dues payments after January 13, 2015 did not effectively communicate her desire to resign her union membership. The Supreme Court has held that "dissent is not to be presumed - it must affirmatively be made known to the union by the dissenting employee." *International Association of Machinists v. Street*, 367 U.S. 740, 774 (1961) (interpreting the union shop section of the

Railway Labor Act). Even if discontinuation of payment could be construed as a resignation by a union member, Walker's actions were inconsistent since she stopped paying for a period, but then made another voluntary payment. A reasonable person would not consider such equivocal behavior, without more, as communicating an intention to resign union membership.

Furthermore, the MEA Constitution provides that "any member of the Association shall remain a member until resignation, expulsion or suspension, or failure to fulfill the conditions of membership other than payment of dues as established in the Bylaws." (MEA Constitution, Article III, § 4; ECF No. 19-5, PageID.146). This means that failing to pay dues is not enough to terminate membership in and of itself. The MEA website instructs that all resignations "be submitted in writing (signed and dated by the member) by mail or email to the address provided (https://mea.org/join/; ECF No. 19-6, PageID.156). Walker does not claim to have mailed or emailed a resignation.

Next, in her response brief, Walker makes an argument based on MEA's "August window" policy. This policy, which is contained in the Continuing Membership Application signed by Walker, as well as in MEA's Bylaws, states that if a member wants to terminate their membership, they

must do so in writing between August 1 and August 31.[1]  Walker argues that MEA's enforcement of its August window policy unlawfully restrained her right to resign her membership at will, and therefore its collection action violates her First Amendment free speech rights.  However, as discussed above, there is no evidence that Walker attempted to submit a resignation at any time, let alone one that was rejected by MEA for being submitted improperly.

    Finally, the *Janus* decision does not help Walker where the dues at issue were incurred before the Supreme Court issued its decision and Walker was still a member of MEA.  The fact that MEA filed its collection action after *Janus* was decided (to collect dues incurred before *Janus*), does not change the outcome because the holding that agency shop clauses are unconstitutional does not apply retroactively.  *See, Lee v. Ohio Education Assn.*, 951 F.3d 386, 391 (6th Cir., February 24, 2020) (finding that labor unions had a good faith defense to rely upon pre-*Janus* law in collecting agency fees); *Ogle v. Ohio Civ. Serv. Emps. Ass'n*, 951 F.3d 794, 796 (6th Cir. 2020) ("public-sector unions that collected "fair share" fees in reliance on *Abood* may assert a good-faith defense to § 1983

---

[1] MEA's Bylaw I, as amended August 2020, provides that the August window is "currently not being enforced".  *See* ECF No. 25-1, PageID.192.

lawsuits that seek the return of those fees."). Furthermore, *Janus* held that only agency shop dues were unconstitutional, and Walker was not an agency shop member of the MEA.

## CONCLUSION

Walker is correct that she had a right to resign or terminate her union membership. However, she has produced no evidence that she communicated her intent to resign or was prevented from resigning. The MEA's effort to collect dues which were incurred while Walker was a union member is not unconstitutional. Now, therefore,

IT IS HEREBY ORDERED that defendant's motion for summary judgment (ECF No. 19) is GRANTED.

Dated: March 30, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 30, 2021, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk